### A11A0706. JACKSON v. THE STATE.
(713 SE2d 679)

PHIPPS, Presiding Judge.

After a jury trial, Jamie Terrez Jackson was convicted of aggravated battery, two counts of first degree cruelty to children, and second degree cruelty to children, for acts against T. M., the four-year-old son of his girlfriend. Jackson also was convicted of possession of marijuana. He challenges on appeal the sufficiency of

---

the evidence and the effectiveness of his trial counsel. Finding no error, we affirm.

1. Jackson argues that the evidence was insufficient to support his convictions. Viewed in the light most favorable to the verdicts, the evidence showed that on November 20, 2006, T. M. was admitted to the hospital with severe burns on his feet, buttocks, and scrotum; an older burn on his leg; bruises and abrasions over his body; a lacerated liver; and a cut lip. His burns were severely infected. He also was dehydrated and had a high fever. A hospital employee immediately contacted the police.

At the time T. M. was taken to the hospital, he lived with his mother and Jackson who, according to T. M.'s mother, would often discipline him and at times babysat him. T. M.'s mother stated that the burns had occurred on November 13, 2006. She had returned home from an errand to find T. M. sitting in the bathtub, burned. T. M. had been under Jackson's care at the time. The burns worsened over the next week, but neither T. M.'s mother nor Jackson obtained medical help for the boy until November 20.

That night, police searched T. M.'s residence with his mother's consent. There they found Jackson asleep on a bed next to a marijuana cigar, and substances determined to be marijuana were found elsewhere in the house. Jackson was arrested for possession of marijuana. After waiving his *Miranda* rights, Jackson stated that on November 13 he had placed T. M. in the bathtub and then left the room. He speculated that T. M. may have turned on the hot water himself, and stated that the boy had not complained about the water temperature. Jackson stated that he later saw the burns on T. M.'s feet and advised the boy's mother to take him to the doctor. He also stated that he and the boy's mother thought the burns were healing. In addition, Jackson admitted in his statement to disciplining T. M. by hitting him with a belt and with his hand. Jackson also informed the police that some of the marijuana found in the residence belonged to him.

T. M. stated in a forensic interview and testified at trial that Jackson had burned him with hot water on more than one occasion, and that Jackson had slapped his face and punched him in the stomach; T. M. further stated that these actions had hurt him and that when he was taken to the hospital he felt "bad." A doctor specializing in burns, who also was experienced in treating victims of child abuse, opined that the nature of T. M.'s injuries was not consistent with Jackson's account of how the burns had occurred, but was consistent with child abuse. He further testified that the extent of the burns would have caused T. M. intense pain. And he testified that the burns caused scars for which T. M. required ongoing medical therapy and treatment.

Jackson was convicted of aggravated battery for maliciously causing T. M. bodily harm "by seriously disfiguring his body, to wit: by placing him in excessively hot water, resulting in severe burns."[1] He was convicted of two counts of first degree cruelty to children for maliciously causing T. M. excessive physical or mental pain by "hitting the child with an object . . . , resulting in marks on his arms and legs," and by "placing the child in excessively hot water, resulting in severe burns."[2] He was convicted of second degree cruelty to children for, with criminal negligence, causing T. M. excessive physical or mental pain by "failing to get medical treatment for burns the child sustained."[3] And he was convicted of possession of marijuana.

Jackson asserts generally that the evidence did not support his convictions. We find that, under the standard set forth in *Jackson v. Virginia*,[4] the above evidence authorized the jury verdict on each offense for which Jackson was convicted.

2. Jackson argues that he received ineffective assistance of counsel because his trial counsel did not adequately investigate the case or interview witnesses, did not adequately consult with him, and did not object to improper comments made by the state during closing argument.

> To prevail on such [a] claim, a defendant must establish, pursuant to *Strickland v. Washington*,[5] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[6]

(a) Jackson contends that his counsel did not adequately investigate his case or interview witnesses prior to trial. Specifically, he

---

[1] See OCGA § 16-5-24 (a) (a person commits the offense of aggravated battery when he maliciously causes bodily harm to another by, inter alia, seriously disfiguring his body or a member thereof).

[2] See OCGA § 16-5-70 (b) (a person commits the offense of cruelty to children in the first degree when he maliciously causes a child under the age of 18 cruel or excessive physical or mental pain).

[3] See OCGA § 16-5-70 (c) (a person commits the offense of cruelty to children in the second degree when he, with criminal negligence, causes a child under the age of 18 cruel or excessive physical or mental pain).

[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[6] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnotes omitted).

argues that his counsel did not contact members of law enforcement, did not test the water temperature at Jackson's house, did not subpoena medical records or Department of Family and Children Services (DFCS) records, and did not consult with an accident reconstructionist regarding the "actual mechanics" of the burn injury to T. M.

At the hearing on Jackson's motion for new trial, however, counsel testified that he and his investigator had interviewed numerous individuals in connection with the case. Counsel testified that the state provided medical records and the report of its expert, and that he engaged a pediatric expert to review the medical records and help prepare cross-examinations. He also explained that he did not interview any of the law enforcement or DFCS witnesses because he believed that by doing so he would have risked providing information to them that could have helped the prosecution. Moreover, Jackson made no proffer as to what a more thorough investigation would have uncovered. The evidence supported a conclusion that Jackson failed to carry his burden of showing deficient performance or prejudice relating to his counsel's preparation for trial.[7]

(b) Jackson contends that his counsel did not spend sufficient time consulting with him before and during trial. Counsel testified at the hearing on Jackson's motion for new trial, however, that he met with Jackson multiple times during the course of the case, showed him materials obtained through discovery, and discussed with him the medical records, how to respond to the state's allegations, and whether Jackson would testify at trial. The evidence supported a conclusion that Jackson failed to carry his burden of showing deficient performance related to the amount of time his counsel spent consulting with him.[8]

(c) Jackson contends that his counsel should have objected to arguments made by the state in its closing that the evidence presented by the defense demonstrated the paucity of the defense's case, on the ground that those arguments constituted impermissible comments on his failure to testify at trial.

> As a rule of constitutional and Georgia statutory law, a prosecutor may not comment upon a defendant's failure to testify at trial. A criminal defendant alleging a violation of this rule establishes reversible error if the prosecutor's manifest intention was to comment on the accused's failure

---

[7] See *Reed v. State*, 285 Ga. 64, 66-67 (6) (673 SE2d 246) (2009); *Harvey v. State*, 284 Ga. 8, 11 (4) (c) (660 SE2d 528) (2008); *Wallace v. State*, 306 Ga. App. 118, 123 (3) (a) (701 SE2d 554) (2010).

[8] See *Knight v. State*, 242 Ga. App. 363, 366 (3) (528 SE2d 855) (2000).

to testify or the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.[9]

The remarks cited by Jackson did not concern his decision not to testify, however; they concerned weaknesses in Jackson's attempts to rebut or explain the state's evidence.[10] Accordingly, the remarks were not improper, and counsel's failure to object to them did not amount to deficient performance.[11]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED JULY 1, 2011.

*David G. Daniell*, for appellant.
*T. Rabb Wilkerson III, District Attorney, Venita S. McCoy, Assistant District Attorney*, for appellee.

---

[9] *Lacey v. State*, 288 Ga. 341, 344 (4) (a) (703 SE2d 617) (2010) (citations and punctuation omitted).

[10] See *Jennings v. State*, 282 Ga. 679, 682 (4) (653 SE2d 17) (2007).

[11] See *Lacey*, supra.